DA 13-0038

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 6

BRIAN F. SCHOOF,

       Plaintiff and Appellant,

   v.

JACK NESBIT, GARY MATTHEWS, MILO
HUBER (deceased), KEITH HOLMLUND,
DOUG ELLINGSON, HAZEL PARKER,
TONY HARBAUGH, and WYATT GLADE,

       Defendants and Appellees.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and For the County of Custer, Cause No. DV 11-63
Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Peter Michael Meloy; Attorney at Law; Helena, Montana

      For Appellees:

         Michael W. Sehestedt; MACo Legal Services; Helena, Montana

         Submitted on Briefs:  August 7, 2013
                  Decided:  January 9, 2014

Filed:

                            _____
                                 Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Brian F. Schoof (Schoof) appeals from the orders of the Sixteenth Judicial District Court dismissing claims made in his Third Amended Complaint against the named public officials (Defendants/Appellees). We reverse and remand for further proceedings, addressing the following issues:

¶2 *1. Does Schoof have standing to pursue his right to know and right of participation claims?*

¶3 *2. Did the District Court err in dismissing Schoof's right to know and right of participation claims as time barred under § 2-3-213, MCA?*

¶4 *3. If the Commissioners' "cash in lieu" policy is determined to be void, does mandamus lie to compel recovery of illegal payments under § 7-4-2714, MCA?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 Schoof, a resident of Custer County, brought this action to challenge a decision by the Custer County Commissioners[1] (the Commissioners) to permit elected county officials to receive cash payments in lieu of county contributions on their behalf to a group health insurance program. Schoof alleges that the Commissioners unlawfully adopted the "cash in lieu" policy during an unannounced meeting held on July 26, 2007. He further alleges that "[n]either the meeting notice, nor the minutes of the proceeding provide sufficient notice of the change in policy such that the public would have any

---

[1] Schoof's complaint names current and former Custer County Commissioners and the Custer County Attorney as defendants. Schoof alleges that Defendants Nesbit, Huber, and Matthews served as commissioners during 2007, and that Defendants Nesbit, Ellingson, Parker, Holmlund, Huber, and Harbaugh received cash payments in lieu of health insurance premiums during their respective tenures as commissioners. Defendant Glade is the Custer County Attorney.

2

reasonable basis to understand the substance of the policy that was to be considered or had been adopted." According to Schoof, neither he nor the public was advised of the decision until Deputy County Attorney Joni Oja revealed it during a public meeting on August 17, 2011, over four years later. On September 16, 2011, Schoof filed this action to invalidate the Commissioners' decision and compel the Custer County Attorney to recover the cash payments as illegally made.

¶6 Schoof's Third Amended Complaint sets out four counts: (1) violation of § 2-3-203, MCA, (Montana's open meetings statute) and Article II, Section 9 of the Montana Constitution (right to know); (2) violation of § 2-2-102, MCA,[2] and Article II, Section 8 of the Montana Constitution (right of participation); (3) request for declaration that the "cash in lieu" policy is unlawful; and (4) request for mandamus to issue compelling the Custer County Attorney to commence an action to recover any illegal payments.

¶7 Pursuant to Appellees' M. R. Civ. P. 12(b)(6) motion, the District Court dismissed Schoof's right to know and right of participation claims as time barred under the 30-day statute of limitations set forth in § 2-3-213, MCA. The District Court rejected Schoof's argument that the discovery rule provided in § 27-2-102(3), MCA, tolled the 30-day limitations period until Schoof discovered or should have discovered the facts underlying his claims, concluding that the statute did not apply in this case.

¶8 The District Court issued a second order dismissing Schoof's declaratory and mandamus claims on December 17, 2012. As to Schoof's claim for declaratory relief, the

---

[2] Schoof's complaint cites § 2-2-102, MCA, as the statutory authority for his right of participation claim, but the right of participation provision is actually codified at § 2-3-103, MCA.

3

District Court determined that Schoof lacked standing because he had not alleged facts showing that he had suffered an injury distinct from the general public, and instead his injuries were coequal with all citizens and taxpayers. On the mandamus claim, the District Court noted that only ministerial acts, not discretionary, are subject to the writ, and reasoned that because Rule 3.1(a)(1) of the Rules of Professional Conduct requires a county attorney to exercise discretion in determining whether an action is meritorious, mandamus did not apply.

¶9 Schoof appeals, challenging the dismissal of his right to know, right of participation, and mandamus claims.

**STANDARD OF REVIEW**

¶10 We review *de novo* a district court's ruling on a motion to dismiss pursuant to M. R. Civ. P. 12(b)(6). *Ming Da Situ v. Smole*, 2013 MT 33, ¶ 11, 369 Mont. 1, 303 P.3d 747. "The determination of whether a complaint states a claim is a conclusion of law, and the district court's conclusions of law are reviewed for correctness." *Ming Da Situ*, ¶ 11. We accept the complaint's factual allegations as true and consider the complaint in the "light most favorable" to the plaintiff. *Tally Bissell Neighbors, Inc. v. Eyrie Shotgun Ranch, LLC*, 2010 MT 63, ¶ 15, 355 Mont. 387, 228 P.3d 1134. "We will affirm a district court's dismissal of a complaint for failure to state a claim only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Pederson v. Rocky Mt. Bank*, 2012 MT 48, ¶ 8, 364 Mont. 258, 272 P.3d 663.

4

## DISCUSSION

¶11 **1. Does Schoof have standing to pursue his right to know and right of participation claims?**

¶12 Standing is a threshold requirement that must be decided in every case. *Baxter Homeowners Assn. v. Angel*, 2013 MT 83, ¶ 14, 369 Mont. 398, 298 P.3d 1145. Questions of standing must be addressed *sua sponte* even if not raised by a litigant. *Angel*, ¶ 14. The parties did not raise the issue of standing on appeal. Accordingly, this Court determined *sua sponte* to order supplemental briefing on whether Schoof has standing to assert his right to know and right of participation claims. The parties' supplemental arguments primarily boil down to a dispute over the application of this Court's holding in *Fleenor v. Darby Sch. Dist.*, 2006 MT 31, 331 Mont. 124, 128 P.3d 1048.

¶13 Appellees argue that "there is nothing in Mr. Schoof's Complaint which would take it out of the clear holding in *Fleenor*." We concluded in *Fleenor* that the plaintiff (Fleenor) lacked standing to pursue her right to know and right of participation claims because she failed to allege a sufficient personal stake in, or injury from, the decision of the Darby School District Trustees to hire a new Superintendent. *Fleenor*, ¶¶ 9-12. Appellees contend that Schoof has similarly failed to allege "any personal interest [in] or injury [from]" the challenged action of the Commissioners "beyond the common interest or injury of all citizens or taxpayers."

¶14 Schoof argues that he has shown "a particularized interest" in the Commissioners' actions because he has been closely following the fiscal decisions of the County for

5

several years. He asserts that to deny standing in this case would "strike a blow to the enforceability of the rights to observe and participate." Schoof "respectfully submit[s]" that *Fleenor* should be reexamined—at least insofar as it required Fleenor "to distinguish herself from the general citizenry and other taxpayers." *See Fleenor*, ¶ 10. Schoof argues that "requiring Ms. Fleenor to show an injury different from the general public as an incident of standing will, in many open government cases like the instant one, shield a governmental entity from liability."

¶15 There are two elements to standing: the case-or-controversy requirement imposed by the Montana Constitution, and judicially created prudential limitations imposed for reasons of policy. *Heffernan v. Missoula City Council*, 2011 MT 91, ¶ 31, 360 Mont. 207, 255 P.3d 80 (citing *Olson v. Dept. of Revenue*, 223 Mont. 464, 469-70, 726 P.2d 1162, 1166 (1986)). The constitutional requirements have been described as "absolute," while the prudential limitations contrasted as "malleable." *United Food & Com. Workers v. Brown Group*, 517 U.S. 544, 551, 116 S. Ct. 1529, 1533-34 (1996). It is not always clear whether particular features of the standing requirement are constitutionally mandated or prudential. *Valley Forge Christian College v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471, 102 S. Ct. 752, 758 (1982). However, at an "irreducible minimum," the Constitution requires the plaintiff to show that he has suffered a past, present, or threatened injury to a property or civil right, and that the injury would be alleviated by successfully maintaining the action. *Heffernan*, ¶ 33; *Valley Forge*, 454 U.S. at 472, 102 S. Ct. at 758. A "personal stake in the outcome of the

6

controversy at the commencement of the litigation" is required in every case. *Heffernan*, ¶ 30.

¶16    Our holding in *Fleenor* was premised on two facets of the "injury" requirement. First, we indicated that Fleenor had simply failed to identify an injury. Although she had alleged that "the District failed to properly notify her of votes and decisions leading to the Superintendent's hiring," we observed that she had not alleged "that the District's faulty notice somehow injured or threatened to injure her." *Fleenor*, ¶¶ 3, 11. Second, we indicated that Fleenor also had failed to "distinguish herself from the general citizenry and other taxpayers." *Fleenor*, ¶ 10. We noted that, "other than establishing that Fleenor resides within the Darby School District, attends some school board meetings, and has no children in school, the record is completely silent as to her personal stake or interest in the matter of the hiring of the Superintendent." *Fleenor*, ¶ 11.

¶17    We now conclude that, first, *Fleenor* misconstrued the nature of the "injury" at issue in a right to know or right of participation case by requiring the plaintiff to allege an injury beyond failure to receive proper notice or to allege a personal stake in the particular governmental decision taken, there, the Superintendent's hiring. We believe such requirements impose standing thresholds that are incompatible with the nature of the particular constitutional rights at issue. The right of participation is defined as "the right to expect governmental agencies to afford such reasonable *opportunity* for citizen participation in the operation of the agencies prior to the final decision as may be provided by law." Mont. Const. art. II, § 8 (emphasis added). Agencies are statutorily required to develop procedures for "permitting and encouraging the public to participate

7

in agency decisions that are of significant interest to the public." Section 2-3-103(1)(a), MCA. Such procedures must ensure "adequate notice" and include "a method of affording interested persons reasonable opportunity to submit data, views, or arguments, orally or in written form, prior to making a final decision." Sections 2-3-103(1)(a), -111(1), MCA. Obviously, an opportunity to participate cannot occur unless adequate notice is first provided pursuant to the right to know.

¶18 "No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions . . . ." Mont. Const. art. II, § 9. The Legislature has declared that "public agencies in this state exist to aid in the conduct of the peoples' business" and that the people "do not wish to abdicate their sovereignty to the agencies which serve them." Section 2-3-201, MCA. To that end, "actions and deliberations of all public agencies shall be conducted openly." Section 2-3-201, MCA. Schoof has the right to "observe" the deliberations of the Commissioners.

¶19 Under the plain language of Article II, Sections 8 and 9, and the implementing statutes, the personal stake that Schoof has here is the reasonable "opportunity" to observe and participate in the Commissioners' decision-making process, including submission of information or opinions. To vindicate these rights Schoof should not be required to demonstrate a personal stake in the "cash in lieu" policy or an "injury" beyond being deprived of adequate notice of the Commissioners' proposed action and the corresponding opportunity to observe and participate as a citizen in the process. Otherwise, the constitutional rights to know and participate could well be rendered

8

superfluous because members of the public would be unable to satisfy traditional standing requirements to properly enforce them.

¶20    Secondly, in *Fleenor* we reasoned that a plaintiff's injury must be "distinguishable from the injury to the public generally." *Fleenor*, ¶ 9. We held that "persons who fail to allege any personal interest or injury, beyond that common interest of all citizens and taxpayers, lack standing." *Fleenor*, ¶ 9 (citations omitted). We conclude now that we misapplied this requirement in *Fleenor*; its actual purpose is to ensure that the plaintiff's alleged injury is "concrete," and not "abstract." *Fed. Election Commn. v. Akins*, 524 U.S. 11, 20-23, 118 S. Ct. 1777, 1784-86 (1998). As made in our law, this distinction can be traced back to *Chovanak v. Matthews*, 120 Mont. 520, 188 P.2d 582 (1948). There, we explained that in order to establish a justiciable case or controversy, the plaintiff must show "that he has sustained, or is in immediate danger of sustaining some direct injury . . . and not merely that he suffers in some indefinite way in common with people generally." *Chovanak*, 120 Mont. at 526, 188 P.2d at 585 (citing *Mass. v. Mellon*, 262 U.S. 447, 488, 43 S. Ct. 597, 601 (1923)). More recently, in discussing this rule, the United States Supreme Court explained:

> [t]his Court . . . has often said that "generalized grievances" are not the kinds of harms that confer standing. [Citations to various cases, including *Mellon*, 262 U.S. at 487, 43 S. Ct. at 601.] Whether styled as a constitutional or prudential limit on standing, the Court has sometimes determined that where large numbers of Americans suffer alike, the political process, rather than the judicial process, may provide the more appropriate remedy for a widely shared grievance.

*Akins*, 524 U.S. at 23, 118 S. Ct. at 1785. The *Akins* Court noted that the rule against adjudication of generalized grievances "invariably appears in cases where the harm at

9

issue is not only widely shared, *but is also of an abstract and indefinite nature*—for example, harm to the 'common concern for obedience to law.'" 524 U.S. at 23, 118 S. Ct. at 1785 (emphasis added). The Supreme Court then clarified:

> Often the fact that an interest is abstract and the fact that it is widely shared go hand in hand. But their association is not invariable, and *where a harm is concrete, though widely shared, the Court has found "injury in fact."* . . . Thus the fact that a political forum may be more readily available where an injury is widely shared . . . does not, by itself, automatically disqualify an interest for Article III purposes. *Such an interest, where sufficiently concrete, may count as an "injury in fact."*

*Akins*, 524 U.S. at 24, 118 S. Ct. at 1786 (citations omitted) (emphases added).

¶21 Accordingly, the critical issue in the instant case is not whether Schoof "allege[s] an injury that is distinguishable from the injury to the public generally." *See Fleenor*, ¶ 9; *see also Bd. of Trs. v. Cut Bank Pioneer Press*, 2007 MT 115, ¶ 15, 337 Mont. 229, 160 P.3d 482; *Bryan v. Yellowstone Co. Elementary Sch. Dist. No. 2*, 2002 MT 264, ¶ 20, 312 Mont. 257, 60 P.3d 381; *Armstrong v. State*, 1999 MT 261, ¶ 6, 296 Mont. 361, 989 P.2d 364. As we have noted, "'[t]o deny standing to persons who are in fact injured simply because many others are also injured, would mean that the most injurious and widespread Government actions could be questioned by nobody.'" *Helena Parents Commn. v. Lewis & Clark Co. Commrs.*, 277 Mont. 367, 374, 922 P.2d 1140, 1144 (1996) (emphasis omitted) (quoting *U.S. v. Students Challenging Reg. Agency Procs.*, 412 U.S. 669, 688, 93 S. Ct. 2405, 2416 (1973)). Rather, the issue is whether Schoof's injury is sufficiently "concrete." Since the alleged injury is premised on the violation of constitutional and statutory rights, standing depends on "whether the constitutional or statutory provision . . . can be understood as granting persons in the plaintiff's position a

10

right to judicial relief." *Warth v. Seldin*, 422 U.S. 490, 500, 95 S. Ct. 2197, 2206 (1975). Importantly, the governing provisions in this case are directed to the citizen: "The public" has the right to be afforded reasonable opportunity for "citizen participation" in the operation of governmental agencies. Mont. Const. art. II, § 8. "No person" shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies. Mont. Const. art. II, § 9. Procedures must afford "interested persons" reasonable opportunity to submit data, views, or arguments prior to making a final decision. Section 2-3-111(1), MCA. "Every citizen" has a right to inspect and take a copy of any public writings of this State (with certain exceptions). Section 2-6-102(1), MCA. All meetings of governmental bodies must be open to "the public." Section 2-3-203(1), MCA. Agencies must develop procedures permitting and encouraging "the public" to participate in agency decisions. Section 2-3-103(1)(a), MCA. When a governmental agency fails to provide proper notice of a meeting, *see* §§ 2-3-103 to -107, MCA, or holds an unlawful closed meeting, *see* § 2-3-203, MCA, or denies reasonable opportunity to submit data, views, or arguments prior to making a final decision, *see* § 2-3-111, MCA, the "harm is concrete, though widely shared," *see Akins*, 524 U.S. at 24, 118 S. Ct. at 1786.

¶22 Moreover, at the time the Commissioners allegedly held their closed meeting, § 2-3-114, MCA (2005), provided: "The district courts of the state have jurisdiction to set aside an agency decision under this part upon petition made within 30 days of the date of the decision of *any person whose rights have been prejudiced*." (Emphasis added.) In *Druffel v. Bd. of Adjustment*, 2007 MT 220, ¶ 17, 339 Mont. 57, 168 P.3d 640, we

11

interpreted similar "any person" language under § 76-2-327, MCA, as conferring broad standing rights on the aggrieved party to pursue the statutory remedy at issue. We applied the rule that the plain meaning of a statute controls our interpretation if the Legislature's intent can be determined from it. *Druffel*, ¶¶ 16-17. In this case, it is clear that the Legislature intended to grant relief to "any person whose rights have been prejudiced."[3]

¶23 Given the participatory rights Schoof seeks to vindicate, we conclude that he has alleged a sufficiently concrete injury to satisfy standing requirements.

¶24 A question naturally arises regarding how far a citizen's standing extends. The comments of the Constitutional Convention delegates indicate that the right of participation was intended to afford citizens a reasonable opportunity to participate in any agency decision that affects them. For example, one delegate stated: "[W]e think that when those rules and those regulations are made that are going to affect our everyday lives, that we should have the right to participate." Montana Constitutional Convention, Verbatim Transcript, Mar. 7, 1972, p. 1661. Another delegate stated: "Montanans want to be a part of their government. They want to know their government and what it is doing. They want to provide input on matters which affect them directly or which they are keenly interested in." Montana Constitutional Convention, Verbatim Transcript, Mar. 7, 1972, p. 1657. This point was made repeatedly during the debate. *See* Montana Constitutional Convention, Verbatim Transcript, Mar. 7, 1972, pp. 1655, 1656, 1657,

[3] While we recognize that § 2-3-114, MCA, generally applies to right of participation claims and § 2-3-213, MCA, generally applies to right to know claims, there is a "fundamental link between the right to know and participate." *Bryan*, ¶ 30. Therefore, we see no reason to distinguish between these closely related provisions for purposes of standing in this case.

1661, 1664, 1665, 1667. Regarding the right to know, the delegates contemplated a goal of ensuring that "the deliberations and resolution of all public matters must be subject to public scrutiny." Montana Constitutional Convention, Verbatim Transcript, Mar. 7, 1972, p. 1670.

¶25 It is not appropriate in this case to address the parameters of standing for right to know and right of participation claims that may arise in other contexts. However, based on the constitutional language and the delegates' comments, it is clear that a citizen in Schoof's position who is subject to a governmental agency's jurisdiction has standing to assert a violation of these provisions. Schoof is a resident of Custer County. Accordingly, we hold that Schoof has standing to pursue further discovery on his claims, and overrule *Fleenor* to the extent that it is inconsistent with this opinion.

¶26 ***2. Did the District Court err in dismissing Schoof's right to know and right of participation claims as time barred under § 2-3-213, MCA?***

¶27 The District Court dismissed Schoof's right to know and right of participation claims pursuant to § 2-3-213, MCA, which provides the limitations period for actions arising under § 2-3-203, MCA. Section 2-3-203, MCA, statutorily codifies the mandate of Article II, Section 9 of the Montana Constitution that meetings of governmental bodies are to be open to the public. *Motta v. Philipsburg Sch. Bd. Trs.*, 2004 MT 256, ¶ 16, 323 Mont. 72, 98 P.3d 673; *Bryan*, ¶ 24. It provides, in pertinent part:

> (1) All meetings of public or governmental bodies, boards, bureaus, commissions, agencies of the state, or any political subdivision of the state or organizations or agencies supported in whole or in part by public funds or expending public funds, including the supreme court, must be open to the public.

13

(2) All meetings of associations that are composed of public or governmental bodies referred to in subsection (1) and that regulate the rights, duties, or privileges of any individual must be open to the public.

Section 2-3-203(1), (2), MCA.

¶28 As alleged, the Commissioners' meeting at issue in this case was closed and occurred on July 26, 2007. At that time, § 2-3-213, MCA (2005), provided: "Any decision made in violation of 2-3-203 may be declared void by a district court having jurisdiction. A suit to void any such decision must be commenced within 30 days *of the decision*." (Emphasis added.) In 2007, the Legislature amended § 2-3-213, MCA, to add a discovery provision to the 30-day limitations period: "A suit to void a decision must be commenced within 30 days of the date on which *the plaintiff or petitioner learns, or reasonably should have learned, of the agency's decision*." (Emphasis added.) However, the 2007 amendment did not become effective until October 1 of that year. Section 1-2-201, MCA (2007). Accordingly, the 2005 version of the statute was still in effect and provides the limitations period for Schoof's right to know claim.

¶29 Similarly, § 2-3-114, MCA (2005), set forth a 30-day limitations period for claims brought pursuant to § 2-3-101, et seq., MCA—"secur[ing] to the people of Montana their constitutional right to be afforded reasonable opportunity to participate in the operation of governmental agencies prior to the final decision of the agency." Section 2-3-101, MCA. Like § 2-3-213, MCA, the Legislature amended § 2-3-114, MCA, in 2007 to include a discovery provision. The District Court in the instant case did not apply § 2-3-114, MCA, to Schoof's right of participation claim, but instead dismissed it under § 2-3-213,

14

MCA. Both statutes contain parallel language and provide a 30-day limitations period, so the court's decision did not affect its analysis in any way. As Appellees correctly note, all of the elements giving rise to Schoof's right to know and right of participation causes of action arose when the Commissioners closed their meeting to the public on July 26, 2007. Schoof did not file this action until September 16, 2011—over four years later. Based on a plain reading of § 2-3-213, MCA, and § 2-3-114, MCA, Schoof's claims would be time barred.

¶30 Schoof does not dispute that he filed beyond the 30-day limitations period, but instead urges us to apply the discovery provision within § 27-2-102(3), MCA, to toll the limitations period. He cites our decisions in *Weidow v. Uninsured Employers Fund*, 2010 MT 292, 359 Mont. 77, 246 P.3d 704; *BNSF Ry. Co. v. Cringle*, 2010 MT 290, 359 Mont. 20, 247 P.3d 706 (*Cringle I*); *Lozeau v. GEICO Indem. Co.*, 2009 MT 136, 350 Mont. 320, 207 P.3d 316; and *Harrison v. Chance*, 244 Mont. 215, 797 P.2d 200 (1990), and argues that "[w]hile the circumstances under which the doctrine of equitable tolling has been applied in the foregoing cases are not similar to the instant case, certain general tolling principles underlying application of the doctrine are apposite." He further argues for "a 'discovery rule' which tolls the limitations period until the date the plaintiff discovered or through due diligence could have discovered its cause of action. The common law called this principle 'equitable tolling.'" Finally, he urges that "[t]his equitable principle must be applied in open-meeting cases."

A.     **Section 27-2-102(3), MCA**

¶31 Section 27-2-102(3), MCA, provides:

The period of limitation does not begin on any claim or cause of action for an injury to person or property until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the injured party if:

(a) the facts constituting the claim are by their nature concealed or self-concealing; or

(b) before, during, or after the act causing the injury, the defendant has taken action which prevents the injured party from discovering the injury or its cause.

The District Court declined to apply § 27-2-102(3), MCA, for two reasons. First, it determined that Schoof failed to meet the "injury to person or property" requirement of the statute. Citing the United States Supreme Court in *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 306-10, 106 S. Ct. 2537, 2542-45 (1986), the District Court determined that not every violation of a constitutional right involves injury to person or property. Second, the District Court reasoned that the 2007 Legislature would not have amended § 2-3-213, MCA, to include a discovery rule if the previous version was already subject to § 27-2-102(3), MCA. Appellees raise substantially these same arguments in their brief and cite our language in *Kadillak v. Anaconda Co.*, 184 Mont. 127, 140, 602 P.2d 147, 155 (1979), stating that the right of participation claim made in that case was barred because it was filed beyond the 30-day limitations period. Schoof responds that this Court has never interpreted the "injury to person or property" requirement of § 27-2-102(3), MCA, that no implications should be drawn from the Legislature's 2007 amendment to § 2-3-213, MCA, and that *Kadillak*'s reasoning on this issue was dicta.

¶32 We have not previously interpreted § 27-2-102(3), MCA, as applying to right to know or right of participation claims, or recognized these claims as "injur[ies] to person

16

or property" that would be necessary to come within the statute. We decline to address these issues here. Instead, we believe common law equitable tolling appropriately resolves the matter. Therefore, we need not assess the Legislature's reasons for amending § 2-3-213, MCA, (or § 2-3-114),[4] nor dissect our decision in *Kadillak*. It is enough to note that the Court did not consider or address equitable tolling in that case.

## B. Equitable tolling

¶33 The doctrine of equitable tolling arrests the running of the limitations period after a claim has accrued, allowing "in limited circumstances for an action to be pursued despite the failure to comply with relevant statutory filing deadlines." *Lozeau*, ¶ 14. We have previously utilized a narrow, three-part test in applying the doctrine:

> the statute of limitations may be tolled when a party reasonably and in good faith pursues one of several possible legal remedies and the claimant meets three criteria: (1) timely notice to the defendant within the applicable statute of limitations in filing the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim.

*Lozeau*, ¶ 14 (citing *Let the People Vote v. Bd. of Co. Comm. of Flathead Co.*, 2005 MT 225, ¶ 18, 328 Mont. 361, 120 P.3d 385).

¶34 While this three-part test is appropriate in cases involving alternate legal remedies, the rationale behind the doctrine of equitable tolling serves broader purposes than merely those embodied by this test. "The policy behind the doctrine of equitable tolling is . . . to 'avoid forfeitures and allow good faith litigants their day in court.'" *Brilz v. Metro. Gen.*

---

[4] This is certainly not a case where "the Legislature goes further and dictates that a decision 'is not appealable' if it is not appealed within the specified timeframe." *BNSF Ry. Co. v. Cringle*, 2012 MT 143, ¶ 31, 365 Mont. 304, 281 P.3d 203 (*Cringle II*) (Nelson, Cotter, & Rice, JJ. concurring). Indeed, there is no indication that the Legislature intended to preclude exceptions to the time bars contained in § 2-3-213, MCA, or § 2-3-114, MCA. *See Cringle II*, ¶ 30 (Nelson, Cotter, & Rice, JJ. concurring).

17

*Ins. Co.*, 2012 MT 184, ¶ 16, 366 Mont. 78, 285 P.3d 494 (quoting *Addison v. State*, 578 P.2d 941, 945 (Cal. 1978)). A plaintiff should not be deprived of his or her claims "when such an approach would serve no policy purpose." *Weidow*, ¶ 28. We have emphasized "'the importance of applying procedural bars regularly and consistently,'" *Weidow*, ¶ 28 (citation omitted), acknowledged that firm deadlines for filing an appeal "'advance the interests of the parties and the legal system in fair notice and finality,'" *Cringle II*, ¶ 21 (majority) (citation omitted), and imposed upon parties the "'duty to monitor litigation.'" *Cringle II*, ¶ 21 (citations omitted). However, we have also recognized that equitable principles excuse strict compliance with categorical time bars in some cases. *Cringle II*, ¶ 21. Here, it is alleged that the Commissioners adopted a policy during an unannounced meeting and failed to provide sufficient information in the meeting minutes to advise the public of that action, thus preventing a good faith litigant from filing a timely claim. We cannot permit the constitutional right to know and right of participation to be abrogated by a failure to provide notice or adequate information, as alleged.

¶35 This Court has previously considered adoption of aspects of federal equitable tolling rules. *See Arthur v. Pierre Ltd.*, 2004 MT 303, ¶¶ 40-42, 323 Mont. 453, 100 P.3d 987 (discussing federal equitable tolling in sexual discrimination context); *Cringle II*, ¶ 23 (discussing federal equitable tolling in employment discrimination context). The Second Circuit Court of Appeals has held that equitable tolling may extend a statute of limitations in "'rare and exceptional circumstances,'" *Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir. 2000) (citations omitted), when the "defendant is responsible for concealing the existence of plaintiff's cause of action." *Veltri v. Bldg. Serv. 32b-J Pension Fund*,

18

393 F.3d 318, 323 (2d Cir. 2004). While such conduct is "often itself fraudulent," equitable tolling for this purpose does not require that the defendant's conduct rise to the level of fraud, or even be intentional, but only that the nature of the defendant's actions has concealed from the plaintiff the existence of the claim. *Veltri*, 393 F.3d at 323 (citing *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985)). This relief is only available when the plaintiff is actually prevented from filing on time despite exercising "that level of diligence which could reasonably be expected in the circumstances." *Veltri*, 393 F.3d at 322; *see also Cringle II*, ¶ 21 (relief from a filing deadline "requires, at a minimum, reasonable effort to pursue one's legal rights" (citing *Puhto v. Smith Funeral Chapels, Inc.*, 2011 MT 279, ¶ 14, 362 Mont. 447, 264 P.3d 1142)).

¶36 Taken as true, Schoof's allegations qualify for application of these equitable tolling principles. Schoof contends that, despite his diligent scrutiny of the Commissioners' actions, neither he nor the public learned or could have learned about the "cash in lieu" policy until four years after it had been adopted, at which time he promptly filed suit. The reason for the delay, as alleged by Schoof, is the Commissioners' actions in holding a closed meeting and failing to publish sufficient information about their decision for the public to be notified. If proven, these circumstances would justify the equitable tolling of the 30-day limitations period for the period of concealment, pursuant to the principles stated herein.

¶37 Adoption of these principles supplements, rather than overrules, our prior equitable tolling jurisprudence. The three-part test applied in *Lozeau* and other cases still

19

presents a viable framework for resolving tolling issues where alternative legal remedies exist. However, this Court has "reject[ed] any one-size-fits-all approach that would serve only to undermine the purpose of the equitable tolling doctrine and . . . deprive a plaintiff of his or her rights . . . ." *Weidow*, ¶ 28. Our holding today merely applies the doctrine to those instances where a plaintiff is substantially prejudiced by a defendant's concealment of a claim, despite the exercise of diligence by the plaintiff.

¶38 Statutes of limitations provide "a reasonable means of preventing stale claims and ensuring that claims are filed before essential evidence disappears." *Harrison*, 244 Mont. at 226, 797 P.2d at 206. However, the alleged concealing conduct in this case, coupled with the overriding constitutional importance of transparency in local government, *see* § 2-3-201, MCA, requires application of equitable tolling principles if the allegations of the complaint are factually established.

¶39 **3.** *If the Commissioners' "cash in lieu" policy is determined to be void, does mandamus lie to compel recovery of illegal payments under § 7-4-2714, MCA?*

¶40 Schoof's remaining issue on appeal focuses on the propriety of mandamus to require the Custer County Attorney to collect any illegal "cash in lieu" payments that have been made to the Commissioners. Schoof argues that "[i]f the lower court set aside the decision made in the course of the illegal meeting there was no basis for making the cash payments . . . and the County Attorney has an obligation to recover the payments . . . ." Schoof thus premises the validity of his mandamus claim on the *possibility* of receiving a court order setting aside the Commissioners' decision sometime in the future. This Court "'will not act when the legal issue raised is only hypothetical or the existence

of a controversy merely speculative.'" *Havre Daily News, LLC v. City of Havre*, 2006 MT 215, ¶ 19, 333 Mont. 331, 142 P.3d 864 (citation omitted). No order setting aside the Commissioners' decision has been issued in this case. Therefore, Schoof's mandamus argument is hypothetical, and we decline to reach its merits today.

## CONCLUSION

¶41    It is possible that, with the application of equitable tolling principles, Schoof could prove a "set of facts in support of his claim that would entitle him to relief." *Pederson*, ¶ 8. Further proceedings will be required. Although the District Court observed that there were "substantial factual indicia that Defendants conducted their July 26, 2007 meeting in violation of Montana's open meetings law and Article II, Sections 8 and 9 of the Montana Constitution," the record in this case does not establish what notice, if any, the public actually received, both before and after the meeting in question, nor what diligence Schoof exercised in ascertaining his claims. Having concluded that Schoof has standing to pursue his claims, we reverse and remand for further proceedings consistent herewith.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER

21

Justice Laurie McKinnon, specially concurring.

¶42   I join the Court's Opinion as to Issues 1 and 3. I agree that Schoof has standing to assert his right-to-participate and right-to-know claims, and I also agree with the Court's decision, and underlying analysis, to overrule *Fleenor v. Darby School District*, 2006 MT 31, 331 Mont. 124, 128 P.3d 1048. The nature of the "injury" in right-to-participate and right-to-know cases is the denial of a reasonable *opportunity* to participate in the decisions of public agencies and to observe a public agency's deliberations. By their nature, the constitutional and statutory guarantees are shared by the general citizenry, and their infringement—for example, by failing to provide proper notice of a meeting, by holding an unlawful closed meeting, or by denying the opportunity to submit data, views, or arguments prior to making a final decision—necessarily injures the general citizenry. I believe our Opinion correctly recognizes and clarifies these concepts. Regarding Issue 2, however, it is my view that we should be applying statutory tolling, rather than common law tolling. Thus, as detailed below, I specially concur as to this issue.

¶43   In response to Defendants' statute-of-limitations defense, Schoof argued that the running of the limitations period should be tolled pursuant to § 27-2-102, MCA. Schoof did not invoke the common law doctrine of equitable tolling; he invoked statutory tolling. As a result, the District Court addressed the applicability of statutory tolling only. The court did not consider or issue a ruling on common law tolling—a doctrine with which the presiding judge (the Honorable Blair Jones) was certainly familiar, given that he was also the presiding judge in one of our prior equitable tolling cases: *Arthur v. Pierre Ltd.*, 2004 MT 303, 323 Mont. 453, 100 P.3d 987.

22

¶44 On appeal, the parties have briefed the issue of statutory tolling. The Court, in electing to apply common law tolling instead, points to the fact that Schoof cited several equitable tolling cases in his opening brief. Opinion, ¶ 30 (citing *Weidow v. Uninsured Employers' Fund*, 2010 MT 292, 359 Mont. 77, 246 P.3d 704; *BNSF Ry. Co. v. Cringle* ("*Cringle I*"), 2010 MT 290, 359 Mont. 20, 247 P.3d 706; *Lozeau v. GEICO Indem. Co.*, 2009 MT 136, 350 Mont. 320, 207 P.3d 316; and *Harrison v. Chance*, 244 Mont. 215, 797 P.2d 200 (1990)). I do not believe, however, that Schoof genuinely intended with these citations to obtain application of common law equitable tolling. Indeed, he ties the "general tolling principles" of these cases into his analysis under § 27-2-102(3), MCA. But even if Schoof did intend to invoke equitable tolling on appeal, he did not preserve this legal theory in the District Court. As we recently reiterated, "[i]t is well established that we do not consider new arguments or legal theories for the first time on appeal." *Pilgeram v. Greenpoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 20, 373 Mont. 1, 313 P.3d 839; *accord Country Highlands Homeowners Assn. v. Bd. of Co. Commrs.*, 2008 MT 286, ¶ 18, 345 Mont. 379, 191 P.3d 424; *Kurtzenacker v. Davis Surveying, Inc.*, 2012 MT 105, ¶ 17, 365 Mont. 71, 278 P.3d 1002. Hence, I disagree with the Court's decision to resolve this appeal based on a legal doctrine that was not presented to the District Court in the first instance and whose application on appeal, therefore, violates our rules of appellate practice. I instead would analyze the question properly before us: whether Schoof is entitled to statutory tolling under § 27-2-102, MCA.

¶45 Pursuant to § 27-2-102(1)(a), MCA, "a claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on

23

the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action." Schoof's claim accrued on July 26, 2007, when the Custer County Commissioners unlawfully (according to Schoof's allegations) adopted the "cash in lieu" policy during an unannounced meeting.

¶46 Distinct from the question of accrual is the question of whether the limitations period has been triggered. "Accrual, as we have said, occurs once events satisfying all the elements of a cause of action have taken place. At that point, the period prescribed by the applicable statute of limitations ordinarily begins to run—time begins to count against the plaintiff, such that if enough of it goes past he can no longer obtain relief." *William A. Graham Co. v. Haughey*, 646 F.3d 138, 147 (3d Cir. 2011). That is the general rule set forth in § 27-2-102(2), MCA: "Unless otherwise provided by statute, the period of limitation begins when the claim or cause of action accrues." Thus, pursuant to the general rule, the limitation period on Schoof's claims began to run on July 26, 2007. Under the law in effect at the time, Schoof had 30 days in which to file a petition alleging violations of the right to know or the right to participate. Sections 2-3-114, -213, MCA (2005). Schoof concedes that he filed the present action beyond this 30-day window.

¶47 Importantly, however, there are

> various statutory and judge-made rules that operate to toll the running of the limitations period—that is, "to stop [its] running"; "to abate" it, [*Black's Law Dictionary* 1652 (Bryan A. Garner ed., 9th ed., 2009)], or "[t]o suspend or interrupt" it, [*Ballentine's Law Dictionary* 1282 (William S. Andersen ed., 3d ed. 1969)]. These tolling doctrines include those for infancy, the pendency of a class action which includes absent class members' claims, and the dictates of equity. Time that passes while a statute is tolled does not count against the limitations period. This can operate to exclude a chunk of time in the middle of the limitations period—

24

the clock could start, then stop when a class action is filed, and then start again once certification is denied. Perhaps more frequently, a tolling rule directs the court to ignore time at the beginning of the limitations period—an infant in Pennsylvania is not affected by any statutory time limit until he achieves the age of majority (though he could theoretically file suit before that date).

*Haughey*, 646 F.3d at 147-48 (some brackets in original, some citations omitted). That is the crux of the issue here: whether there is a tolling doctrine that could apply to suspend the running of the 30-day limitation period applicable to Schoof's claims.

¶48 One possibility—and the one Schoof invokes—is the discovery rule. "Even after a cause of action accrues, the 'running' of the limitations period can be 'tolled' in certain limited circumstances. Under the 'discovery rule' the statute is tolled where the injury is inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of." *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004) (footnotes and some internal quotation marks omitted); *accord Haughey*, 646 F.3d at 150 (the discovery rule is "one of those legal precepts that operate to toll the running of the limitations period after a cause of action has accrued"). This rule is recognized both by statute and under the common law.

¶49 By statute, "[l]ack of knowledge of *the claim or cause of action*, or of *its accrual*, by the party to whom it has accrued does not postpone the beginning of the period of limitation." Section 27-2-102(2), MCA (emphases added). However, lack of knowledge of *the facts* constituting the claim may postpone the beginning of the limitation period:

> The period of limitation does not begin on any claim or cause of action for an injury to person or property until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the injured party if: (a) the facts constituting the claim

25

are by their nature concealed or self-concealing; or (b) before, during, or after the act causing the injury, the defendant has taken action which prevents the injured party from discovering the injury or its cause.

Section 27-2-102(3), MCA (paragraph breaks omitted). The Legislature incorporated this discovery provision into § 27-2-102, MCA, in 1987. *See* Laws of Montana, 1987, ch. 441, § 1.

¶50 Under the common law, the discovery rule has a much lengthier history. The Supreme Court recognized the rule as an established doctrine in *Bailey v. Glover*, 88 U.S. 342 (1875), which involved a claim of fraud. The Supreme Court held that "when there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered by, or becomes known to, the party suing." *Bailey*, 88 U.S. at 349-50. This Court, similarly, applied a discovery rule in *Johnson v. St. Patrick's Hospital*, 148 Mont. 125, 417 P.2d 469 (1966), where a surgical sponge had been left in the plaintiff's body and the plaintiff remained ignorant of this fact for nearly seven years. We held that the limitation period on his medical malpractice claim did not begin until the plaintiff learned, or in exercise of reasonable diligence should have learned, of the presence of the foreign object in his body. *Johnson*, 148 Mont. at 126, 132, 417 P.2d at 470, 473. More recently, we considered the application of a judge-made discovery rule in *Bridgman v. Union Pacific Railroad Co.*, 2013 MT 289, 372 Mont. 124, 311 P.3d 416, which involved a claim under the Federal Employers' Liability Act. Pursuant to this discovery rule, a federal statute of limitations begins to run when the plaintiff knows or has reason to know

of the existence and cause of the injury which is the basis of his action. *Bridgman*, ¶ 24; *Matson v. Burlington N. Santa Fe R.R.*, 240 F.3d 1233, 1235 (10th Cir. 2001).

¶51 As noted, Schoof has invoked the statutory discovery rule. At this point, it is necessary to consider whether the statutes of limitation applicable to his claims permit tolling of the limitation period. Although the Court acknowledges this question, *see* Opinion, ¶ 32 n. 4, I respectfully suggest there is more to be said on the issue.

¶52 As our decision today reflects, this Court's tolling jurisprudence has incorporated aspects of federal tolling rules. Opinion, ¶ 35; *Weidow*, ¶¶ 27-28. Of particular relevance here, federal tolling rules are founded on a rebuttable presumption that limitation periods are subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 130 S. Ct. 2549, 2560 (2010). This presumption is rebutted where "there [is] good reason to believe that Congress did *not* want the equitable tolling doctrine to apply." *U.S. v. Brockamp*, 519 U.S. 347, 350, 117 S. Ct. 849, 851 (1997) (emphasis in original). "Equitable tolling is not permissible where it is inconsistent with the text of the relevant statute." *U.S. v. Beggerly*, 524 U.S. 38, 48, 118 S. Ct. 1862, 1868 (1998). It has been suggested, therefore, that tolling a limitation period requires a threshold determination of whether the Legislature intended to preclude any exceptions to the time bar at issue. *BNSF Ry. Co. v. Cringle* ("*Cringle II*"), 2012 MT 143, ¶ 30, 365 Mont. 304, 281 P.3d 203 (Nelson, Cotter, & Rice, JJ., concurring). If the Legislature did not intend to preclude exceptions to the time bar, then the second step is to determine whether the claimed exception tolls the limitation period on the facts presented. *Cringle II*, ¶ 30 (Nelson, Cotter, & Rice, JJ., concurring). I shall address these two questions in turn.

¶53 First, there is no indication that the Legislature intended to preclude exceptions to the 30-day time bar in §§ 2-3-114 and -213, MCA (2005). A comparison of three Supreme Court cases is useful in this regard. In *Brockamp*, the Supreme Court concluded that tolling was impermissible because the statute at issue (1) set forth its time limitations in unusually emphatic form; (2) used highly detailed and technical language which could not easily be read as containing implicit exceptions; (3) reiterated its limitations several times in several different ways; (4) related to an underlying subject matter, nationwide tax collection, with respect to which the practical consequences of permitting tolling would have been substantial; and (5) would, if tolled, require tolling not only of procedural limitations, but also of substantive limitations on the amount of recovery—a kind of tolling for which the Supreme Court found no direct precedent. *Holland*, 130 S. Ct. at 2561 (summarizing the reasoning in *Brockamp*, 519 U.S. at 350-52, 117 S. Ct. at 851-52). Similarly, the Supreme Court held in *Beggerly* that tolling was impermissible because (1) the 12-year statute of limitation at issue was unusually generous and (2) the underlying claim dealt with ownership of land and thereby implicated landowners' need to know with certainty what their rights were and the period during which those rights may be subject to challenge. *Holland*, 130 S. Ct. at 2561 (summarizing the reasoning in *Beggerly*, 524 U.S. at 48-49, 118 S. Ct. at 1868). In contrast, the one-year limit on filing a federal habeas corpus petition, which was at issue in *Holland*, did not contain unusually emphatic language and did not reiterate its time limitation. Moreover, application of equitable tolling would not affect the substance of the petitioner's claim, and the one-year limitation period was not particularly long. Finally, equitable principles traditionally

28

have governed the substantive law of habeas corpus. Accordingly, the Supreme Court concluded that the one-year limit "reads like an ordinary, run-of-the-mill statute of limitations." *Holland*, 130 S. Ct. at 2561.

¶54 Likewise, here, the 30-day limitation period is extremely short. It is not set forth in "unusually emphatic" form or using highly detailed and technical language, nor is the time limit reiterated several times in several different ways. Tolling would not affect the substance of the plaintiff's claim, and the application of equitable principles is consistent with the overriding constitutional goal of transparency and accountability in government. For these reasons, I conclude that the 30-day limitation period may be tolled.

¶55 The next question, therefore, is whether the facts support tolling under the claimed exception. I conclude that they do. Again, pursuant to § 27-2-102(3), MCA, the period of limitation does not begin on any claim or cause of action "for an injury to person or property" until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the plaintiff. This provision applies only if the facts constituting the claim are by their nature concealed or self-concealing or if the defendant has taken action which prevents the plaintiff from discovering the injury or its cause. Section 27-2-102(3)(a), (b), MCA.

¶56 Schoof argued that since Defendants allegedly adopted the "cash in lieu" policy in a closed session and "obfuscat[ed]" the nature of this decision in the minutes, the facts underlying his claims were concealed and he was prevented from discovering the injury. He contended, therefore, that the 30-day limitation period should be tolled pursuant to the discovery rule in § 27-2-102(3), MCA. The District Court noted "substantial factual

29

indicia" that Defendants had conducted their July 26, 2007 meeting in violation of the law, but the court nevertheless denied Schoof's request for tolling on the ground that "[a] deprivation of a constitutional right, in itself, is not an 'injury to person or property' " under § 27-2-102(3), MCA. As support for this proposition, the District Court cited *Memphis Community School District v. Stachura*, 477 U.S. 299, 106 S. Ct. 2537 (1986). The issue in *Stachura*, however, was "whether 42 U.S.C. § 1983 authorizes an award of compensatory damages based on the factfinder's assessment of the value or importance of a substantive constitutional right." 477 U.S. at 300, 106 S. Ct. at 2539. The Supreme Court did not consider whether an alleged constitutional violation may be construed as "an injury to person" for purposes of a statute governing the limitations period.

¶57 In contrast, the Supreme Court did consider this question the year before in *Wilson v. Garcia*, 471 U.S. 261, 105 S. Ct. 1938 (1985). There, the Supreme Court was tasked with determining "the most appropriate state statute of limitations to apply to claims enforceable under [42 U.S.C. § 1983]." *Wilson*, 471 U.S. at 262, 105 S. Ct. at 1939-40. Section 1983, enacted as part of the Civil Rights Act of 1871, authorizes a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States." After reviewing the history and purposes of this statute, the Supreme Court concluded:

> Congress unquestionably would have considered the remedies established in the Civil Rights Act to be more analogous to tort claims for personal injury than, for example, to claims for damages to property or breach of contract. The unifying theme of the Civil Rights Act of 1871 is reflected in the language of the Fourteenth Amendment that unequivocally recognizes the equal status of every "*person*" subject to the jurisdiction of any of the several States. The Constitution's command is that all "*persons*" shall be

accorded the full privileges of citizenship; no *person* shall be deprived of life, liberty, or property without due process of law or be denied the equal protection of the laws. A violation of that command is an injury to the individual rights of the person.

*Wilson*, 471 U.S. at 277, 105 S. Ct. at 1947-48 (emphases in original, footnote omitted).

The Supreme Court found the following characterization of § 1983 persuasive: " 'In essence, § 1983 creates a cause of action where there has been injury, under color of state law, to the person or to the constitutional or federal statutory rights which emanate from or are guaranteed to the person. In the broad sense, every cause of action under § 1983 which is well-founded results from "personal injuries." ' " *Wilson*, 471 U.S. at 278, 105 S. Ct. at 1948 (quoting *Almond v. Kent*, 459 F.2d 200, 204 (4th Cir. 1972)). Thus, the Supreme Court held that a claimed violation of constitutional rights is subject to a state's statute of limitation governing "injury to the person." *Wilson*, 471 U.S. at 280, 105 S. Ct. at 1949; *see also Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991) (observing that the Supreme Court in *Wilson* "determined that the personal injury statute of limitations best emphasized the personal nature of constitutional wrongs"); *Harvey v. Waldron*, 210 F.3d 1008, 1013 (9th Cir. 2000) (applying, in a § 1983 action, Montana's limitations period for "personal injuries"), *overruled in part on other grounds*, *see Szajer v. City of Los Angeles*, 632 F.3d 607, 611 (9th Cir. 2011).

¶58 By the same reasoning, it follows that a violation of the right to participate or the right to know is an injury to the rights of the person for purposes of § 27-2-102(3), MCA. Although Article II, Section 8 refers to the "public," the statutes implementing this provision treat "public" and "persons" interchangeably. For instance, all "persons" must

be afforded reasonable opportunity to submit data, views, or arguments prior to the final agency decision. Section 2-3-111(1), MCA; *see also* §§ 2-3-103, -114, MCA. Article II, Section 9, on the other hand, states specifically that no "person" shall be deprived of the right to examine documents or to observe the deliberations of public bodies or agencies. Accordingly, a cause of action seeking to enforce these rights is one for "an injury to person," and the discovery rule set forth in § 27-2-102(3), MCA, applies.[1]

¶59  I therefore disagree with the District Court's reasoning and conclusion that tolling under § 27-2-102(3), MCA, is not applicable to Schoof. Schoof has alleged "an injury to person"—violations of his right to know and right to participate. Schoof has further alleged that the facts constituting his claims—the adoption of a "cash in lieu" policy at an unannounced meeting—are, by their nature, self-concealing and that he was prevented, due to the self-concealing nature of Defendants' action, from discovering the injury or its cause. I consequently would hold that § 27-2-102(3), MCA, is applicable to Schoof.

¶60  The foregoing analysis is based on a straightforward application of § 27-2-102(3), MCA, and does not take into consideration the fact that the Legislature incorporated a discovery rule directly into §§ 2-3-114 and -213, MCA, in 2007. *See* Laws of Montana, 2007, ch. 211.[2] Defendants contend that the incorporation of a specific discovery rule into these statutes is evidence that the general discovery rule in § 27-2-102(3), MCA, is

---

[1] In relying on the Supreme Court's analysis of § 1983 in *Wilson*, I do not suggest that all federal statutes and caselaw governing § 1983 actions should apply to violations of the Montana Constitution. I am applying the *Wilson* Court's holding, by analogy, only for the conclusion that a claimed constitutional violation is "an injury to person" for purposes of the discovery rule.

[2] The statutes now provide that a petition must be filed within 30 days of the date on which the plaintiff or petitioner "learns, or reasonably should have learned, of the agency's decision." Sections 2-3-114, -213, MCA. Schoof cannot rely on these amendments because they went into effect on October 1, 2007. Opinion, ¶ 28.

32

not applicable to petitions under §§ 2-3-114 and -213, MCA. Defendants reason that to hold otherwise would render the 2007 legislation useless, and they note that this Court presumes the Legislature, in adopting an amendment to a statute, intended to make some change in existing law. *State v. Heath*, 2004 MT 126, ¶ 34, 321 Mont. 280, 90 P.3d 426.

¶61 Contrary to Defendants' argument, applying the general discovery rule to Schoof's petition actually fulfills legislative intent and does not render the Legislative amendments useless. Senate Bill 177 (2007)—through which the amendments to §§ 2-3-114 and -213, MCA, were enacted—was in response to *Kadillak v. Anaconda Co.*, 184 Mont. 127, 140, 602 P.2d 147, 155 (1979), where this Court said that a district court "lacked jurisdiction" to consider a petition filed under § 2-3-114, MCA, past the 30-day deadline. According to the prefatory language to Senate Bill 177, the Legislature recognized the impracticality of such a rule. After citing the *Kadillak* holding, the prefatory language states:

> WHEREAS, if an agency, board, or other public entity holds a meeting but does not give notice of a meeting, does not publish an agenda for the meeting, and does not publish minutes of a meeting, there is no way for the public to know whether a meeting occurred, whether a decision was made by the agency, board, or other public entity that is of public interest, or whether the 30-day "clock" has in fact started, except by word of mouth; and
>
> WHEREAS, if a potential plaintiff learns of the meeting by word of mouth at a time too late in the 30-day period to discuss the violation of the participation in government statutes with a potential defendant, it could force a hasty decision to bring suit against the agency, board, or other public entity just because the 30-day period has almost passed.

The Legislature sought, therefore, to ensure that a plaintiff or petitioner, "who *might* otherwise be precluded from legal action" under then-existing law, has 30 days from the date on which he or she "learns or should have learned" of the violation to file suit. Laws of Montana, 2007, ch. 211 (emphasis added).

33

¶62 This legislative act served to eliminate any doubt that our holding in *Kadillak* is no longer good law. However, this does not mean that *Kadillak* precludes application of the general discovery rule in § 27-2-102(3), MCA, to Schoof. Even before Senate Bill 177 became law, the precedential value of *Kadillak*'s holding was doubtful. There is no indication that the *Kadillak* Court considered the common law discovery rule. Moreover, the Court had no opportunity to consider § 27-2-102(3), MCA, since that provision was not enacted until 1987. Finally, this Court has recently clarified that "[t]he legislature does not deprive the courts of subject matter jurisdiction when it enacts filing or notice deadlines. We have required accurate use of the term 'jurisdiction' in our more recent history." *Cringle I*, ¶ 13.

¶63 Accordingly, the passage of Senate Bill 177 does not establish that the general discovery rule in § 27-2-102(3), MCA, is inapplicable to petitions under §§ 2-3-114 and -213, MCA. If anything, Senate Bill 177 shows the opposite: that the Legislature wanted to ensure that petitioners like Schoof have a fair opportunity to file their claims upon learning of the right-to-know or right-to-participate violation. *Cf. Heath*, ¶ 34 (finding that "the Legislature's purpose was simply to 'clarify' and 'streamline' " the statutes at issue, not to make substantive changes to them).

¶64 As a final matter, I have some concerns about the Court's approach to the tolling issue here. Although described as a "supplement[ ]" to our common law equitable tolling doctrine, Opinion, ¶ 37, in my view what the Court applies here is, in substance, the common law discovery rule that we recognized as far back as *Johnson*, 148 Mont. 125, 417 P.2d 469—namely, that the period of limitation does not start until the plaintiff

34

learned, or in exercise of reasonable diligence should have learned, of the injury. I do not perceive in our Opinion any rationale for adopting a new discovery doctrine, under the rubric of "equitable tolling," when we already have a viable discovery doctrine whose principles easily could be applied here.

¶65    Moreover, I harbor reservations about the Court's reliance on *Veltri v. Building Service 32B-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004). *See* Opinion, ¶ 35. That case was decided under the "fraudulent concealment" doctrine, *see Veltri*, 393 F.3d at 323, and various federal cases have equated "fraudulent concealment" with equitable *estoppel*, not equitable *tolling*, *see Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990); *Coppinger-Martin v. Solis*, 627 F.3d 745, 751 (9th Cir. 2010).[3] In this regard, a review of cases cited in *Veltri* reveals "troubl[ing]" confusion in federal jurisprudence regarding "the overlap between accrual and tolling based on fraudulent concealment." *Pearl v. City of Long Beach*, 296 F.3d 76, 81-84 (2d Cir. 2002) (cited in *Veltri*); *see also Cada*, 920 F.2d at 450-52 (cited in *Veltri*); *Haughey*, 646 F.3d at 148-49 (explaining the *Cada* court's confusion between "accrual" and the trigger for the limitations clock). Regardless of the confusion in federal law, Montana has a statute— § 27-2-102, MCA—that governs accrual, the starting of the limitations period, and the

---

[3] As one court explained, "Equitable tolling focuses on whether there was excusable delay by the plaintiff: If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs. Equitable estoppel, on the other hand, focuses primarily on actions taken by the defendant to prevent a plaintiff from filing suit, sometimes referred to as fraudulent concealment." *Lukovsky v. City & Co. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008) (citations, emphasis, and internal quotation marks omitted). The elements of Montana's equitable estoppel doctrine are set forth in *Arthur v. Pierre Ltd.*, 2004 MT 303, ¶ 30, 323 Mont. 453, 100 P.3d 987.

role that the discovery rule plays.  To the extent federal cases apply different rules, I am reluctant to endorse them in our caselaw.  If we are to base our decision on common law principles—which I do not believe is necessary here for reasons discussed above—then I would do so by applying our existing discovery rule.  I worry that the Court's approach today of supplementing our established equitable tolling doctrine with a new discovery rule that is taken from federal cases which espouse equitable estoppel may engender significant confusion in this area of law.

¶66     In conclusion, I would hold that Schoof is entitled to tolling under the discovery rule in § 27-2-102(3), MCA.  Common law doctrines—which were neither asserted in the District Court nor properly raised on appeal—are unnecessary to decide this case.  I specially concur.


/S/ LAURIE McKINNON


Justice Patricia O. Cotter joins the Special Concurrence of Justice Laurie McKinnon.


/S/ PATRICIA COTTER