DA 12-0606

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 289

GENE BRIDGMAN,

Plaintiff and Appellant,

v.

UNION PACIFIC RAILROAD CO.,

Defendant and Appellee.

APPEAL FROM:     District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DDV 11-68
Honorable James P. Reynolds, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Jon M. Moyers; Moyers Law P.C.; Billings, Montana

For Appellee:

J. Daniel Hoven, Sara S. Berg, Evan M.T. Thompson;
Browning, Kaleczyc, Berry & Hoven; Helena, Montana

Submitted on Briefs:  July 24, 2013
Decided:  October 7, 2013

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Gene Bridgman appeals an order of the First Judicial District Court, Lewis and Clark County, granting summary judgment to Union Pacific Railroad Company on Bridgman's Federal Employers' Liability Act (FELA) claim and denying his request for additional discovery. We address the following issues on appeal:

¶2 *1. Whether the District Court erred in concluding as a matter of law that Bridgman's FELA claims are barred by the applicable statute of limitations.*

¶3 *2. Whether the District Court erred in denying Bridgman's request for additional discovery pursuant to M. R. Civ. P. 56(f).*

¶4 We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶5 Gene Bridgman worked in the Operating Department for Union Pacific Railroad Company from 1972 until his retirement in 2008. Bridgman worked as a locomotive engineer for much of his career, operating trains on rough tracks and getting on and off moving equipment. In 1995, Bridgman began experiencing back pain, a condition for which he sought medical treatment numerous times over the next twelve years.

¶6 Bridgman initially sought medical help for his back pain from his chiropractor, Dr. Judson Pierce, and his medical doctor, Dr. Thomas Hope, on November 3, 1995. He reported extreme back pain beginning a few days earlier and discussed how the injury may have occurred when he was on his hands and knees replacing a refrigerator seal. He returned to Dr. Pierce for a follow-up visit three days later.

2

¶7     Bridgman first received treatment for his leg pain on January 6, 1998, when he saw Keri Blasingame, APN, and complained of radiating pain into his right calf. She referred him to Dr. Janet Albright, who examined him two days later. Bridgman returned to Dr. Pierce twice in June of that year with complaints of low back pain.

¶8     Two years later, on December 14, 2000, Dr. Pierce treated Bridgman for low back pain and numbness in his left lateral calf. At this appointment, Dr. Pierce and Bridgman discussed possible causes of his injury. Dr. Pierce first observed at that time a potential relationship between Bridgman's employment and his injury, noting that Bridgman "does carry a heavy bag at times for work." Four days later, Bridgman returned to Dr. Pierce, complaining about the pain worsening while sitting; Dr. Pierce discussed the possibility of a herniated disc and a potential referral to a medical doctor if the pain continued. In May 2001, Dr. Pierce again treated Bridgman for low back and leg pain.

¶9     Bridgman sought treatment from Dr. Pierce for low back pain four times over a two-month period in the fall of 2002. During the last of these appointments, on October 22, 2002, Dr. Pierce told Bridgman that a referral to a medical doctor for an MRI would be appropriate if he desired or if his pain did not improve.

¶10    Bridgman did not seek an MRI at that time. Four months later, he returned for two more treatments from Dr. Pierce. During the first appointment, on February 24, 2003, after Bridgman complained of low back and leg pain, Dr. Pierce referred Bridgman to a medical doctor for his leg pain.

3

¶11     On April 23, 2003, following a visit to Dr. Hope, Bridgman saw a podiatrist, Dr. Craig Karrasch, for treatment of burning pain in his left calf.  Dr. Karrasch diagnosed peroneal tendonitis and bilateral plantar fasciitis, a musculoskeletal overuse syndrome, and prescribed custom orthotic devices for pain management.  He also provided a letter to Union Pacific notifying it of the necessity for Bridgman to wear the orthotics while on the job.  Bridgman returned to Dr. Pierce for two more treatments of his low back pain in February 2005.

¶12     On December 26, 2007, Bridgman sought treatment from Dr. Hope for persistent aching of his right calf.  The next month, he complained of low back pain and persistent right leg pain to Dr. Pierce, who again suggested the possibility of a herniated disc.  Bridgman visited Dr. Thomas Fyda for an orthopedic evaluation on January 25, 2008, at which time he complained of lower extremity pain.  Dr. Fyda noted that Bridgman was "a few weeks" into the symptoms.  He ordered an X-Ray, which showed a mild degenerative disc disease.  Bridgman returned for another appointment with Dr. Pierce and told him Dr. Fyda had informed him that he was suffering from low back degeneration.

¶13     On February 22, 2008, Bridgman, on a referral from Dr. Fyda, had an orthopedic evaluation from Dr. Steve Cunningham for his low back and leg pain.  During the visit, Bridgman complained of the pain worsening while sitting for long periods of time. Dr. Cunningham's notes indicate that Bridgman "[was] very concerned . . . that this may

4

be a job-related abnormality." An MRI taken by Dr. Cunningham showed evidence of a degenerative disc disease.

¶14 On that same day, Bridgman filed a Report of Personal Injury with Union Pacific regarding pain in his back and legs. Bridgman reported that he became aware from his physician on February 22, 2008, that his condition may have been caused by his work. Bridgman also reported that he first noticed symptoms "recently" and that he was first treated or diagnosed on February 22, 2008.

¶15 On a referral from Dr. Cunningham, Bridgman visited Dr. Dante Vacca for a neurosurgical consultation in March 2008. Bridgman reported to Dr. Vacca that his pain began the previous December. Bridgman consulted in April with Dr. Andrew Wesely, whose notes indicate that Bridgman had experienced low back and leg pain for "at least four to six months" prior to the appointment.

¶16 On January 20, 2011, Bridgman filed a complaint against Union Pacific under FELA, 45 U.S.C. § 51 *et seq.*, for the back and leg injuries he allegedly sustained during his employment with the company. The complaint alleged that he "began experiencing low back and leg pain" on or about January 22, 2008. Bridgman alleged that Union Pacific knew or should have known that the types of tasks assigned to Bridgman, including getting on and off moving equipment and riding rough tracks, cause cumulative trauma disorder and repetitive musculoskeletal injuries in railroad workers.

¶17 Union Pacific filed a motion for summary judgment arguing that Bridgman's claim was time-barred under FELA's three-year statute of limitations. In support of its

argument, Union Pacific detailed the numerous occasions Bridgman sought medical help for his back and legs to demonstrate the lack of an issue of material fact as to when Bridgman knew or should have known about the possibility of a work-related injury. Bridgman opposed the motion, claiming that a question of material fact existed, and arguing in the alternative that further discovery should be permitted under M. R. Civ. P. 56(f).

¶18 The District Court granted Union Pacific's motion for summary judgment on August 30, 2012. The court held that the statute of limitations began running once Bridgman learned that his back and leg pain may have been caused by his employment; according to the medical records, that was as early as December 14, 2000, when Bridgman and his chiropractor, Dr. Pierce, discussed aspects of his work as a potential cause for his pain. The court rejected Bridgman's argument that knowledge of the *specific cause* of an injury is required to trigger the limitations clock in a FELA action, stating, "A plaintiff who discovers his job may be a potential cause of his injury is on notice of the running of this statute."

¶19 The court also rejected Bridgman's argument that further discovery should be allowed. The court determined that Bridgman did not show what possible discovery would need to be undertaken that would bear on the issue of the statute of limitations. Given that the applicable medical records already were collected and submitted to the court, the court denied Bridgman's request. Bridgman appeals both the District Court's summary judgment ruling and its denial of his request for additional discovery.

**STANDARD OF REVIEW**

¶20 We review de novo a district court's summary judgment ruling. *Johnston v. Centennial Log Homes & Furnishings, Inc.*, 2013 MT 179, ¶ 24, 370 Mont. 529, 305 P.3d 781. Under M. R. Civ. P. 56(c), the moving party has the burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Dovey v. Burlington N. Santa Fe Ry. Co.*, 2008 MT 350, ¶ 12, 346 Mont. 305, 195 P.3d 1223. The burden then shifts to the non-moving party to prove by more than mere denial or speculation, and by competent evidence, that a genuine issue of material fact exists. *Roy v. Blackfoot Tel. Coop., Inc.*, 2004 MT 316, ¶ 11, 324 Mont. 30, 101 P.3d 301.

¶21 We review a district court's M. R. Civ. P. 56(f) ruling for an abuse of discretion. *Rosenthal v. Co. of Madison*, 2007 MT 277, ¶ 23, 339 Mont. 419, 170 P.3d 493.

**DISCUSSION**

¶22 1. *Whether the District Court erred in concluding as a matter of law that Bridgman's FELA claims are barred by the applicable statute of limitations.*

¶23 FELA requires an injured railroad employee to commence a claim for injury within three years from the date the cause of action accrued. 45 U.S.C. § 56. The Act does not define when an injury accrues, but case law distinguishes the standard based upon whether the injury was an accident from a one-time occurrence or an occupational disease accumulating over time. *See Urie v. Thompson*, 337 U.S. 163, 69 S. Ct. 1018 (1949) (recognizing occupational disease claims under FELA for the first time). Claims

7

based upon medical injury accrue when the plaintiff has actual or constructive knowledge of the injury and its cause.  *Urie*, 337 U.S. at 170; *Winter v. U.S.*, 244 F.3d 1088, 1090 (9th Cir. 2001).

¶24   Courts recognize that determining the date of accrual is more difficult in cases involving latent injuries that can go unnoticed or injuries without a definite onset. *Matson v. Burlington N. Santa Fe R.R.*, 240 F.3d 1233, 1235 (10th Cir. 2001).  To avoid applying a strict limitations period requiring plaintiff to file suit before a latent injury manifests itself, the Supreme Court created the "discovery rule," which starts the limitations period running "when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action."  *Matson*, 240 F.3d at 1235; *see also U.S. v. Kubrick*, 444 U.S. 111, 121-23, 100 S. Ct. 352, 361 (1979). Although the Supreme Court applied the discovery rule under the Federal Tort Claims Act, many circuits have applied the discovery rule in FELA actions as well.  *Matson*, 240 F.3d at 1235 (citing *Aparicio v. Norfolk & W. Ry. Co.*, 84 F.3d 803, 814 (6th Cir. 1996); *Fries v. Chicago & N.W. Transp. Co.*, 909 F.2d 1092, 1095 (7th Cir. 1990); *Albert v. Maine Cent. R.R. Co.*, 905 F.2d 541, 544 (1st Cir. 1990);  *Townley v. Norfolk & W. Ry. Co.*, 887 F.2d 498, 501 (4th Cir. 1989); *Kichline v. Consol. Rail Corp.*, 800 F.2d 356, 359 (3d Cir. 1986); *Dubose v. Kansas City S. Ry. Co.*, 729 F.2d 1026, 1030 (5th Cir. 1984)).

¶25   To keep the limitations period from being too open-ended, the discovery rule imposes an affirmative duty upon plaintiffs to exercise reasonable diligence and investigate the cause of a known injury.  It is enough to know that work is a *possible*

cause of an injury to trigger a duty to investigate work conditions and pursue potential claims. *Matson*, 240 F.3d at 1235-36. Although *Urie* allowed for tolling the limitations period while an injury is undetectable, it did not extend that tolling to plaintiffs who are aware that some type of injury exists yet do not "seek diagnosis and investigate the cause." *Fries*, 909 F.2d at 1095 (citing *Kubrick*, 444 U.S. at 120-21).

¶26 On December 14, 2000—more than ten years before filing the complaint—Bridgman and Dr. Pierce discussed the possibility that Bridgman's work contributed to his condition. A few days later, Dr. Pierce communicated with Bridgman the possibility that his back pain may be caused by a herniated disc and discussed a potential referral to a medical doctor. Bridgman argues that requiring him to file within three years of this date would be an "absurd" result given that he was still working full, unrestricted duty and because his symptoms were "distant, benign, infrequent, and resolved." The nature and extent of Bridgman's symptoms over the ensuing years, however, establish that he was on notice of a possible link between his injury and his work prior to the February 2008 appointment with Dr. Cunningham. He went to a doctor seeking treatment for back pain, leg pain or both more than twenty times over the twelve-year period preceding the February 22, 2008, appointment that ultimately resulted in his filing a report of injury claim with Union Pacific. He was alerted to a musculoskeletal overuse condition in 2003. And, though Bridgman's first report of injury stated that he first experienced symptoms in February 2008, even a generous view of the facts establishes that Bridgman had experienced considerable leg and back pain at least since December

9

2007—more than three years before filing his complaint in January 2011. Even if the statute was not triggered in December 2000, Bridgman's experience of similar symptoms over the following years put him on sufficient notice before January 2008 that gave rise under FELA to an affirmative duty to investigate.

¶27 Bridgman's argument is made particularly difficult because the symptoms or contributing factors that led to his report of injury did not differ from those he experienced in the previous twelve years. Although Bridgman claims that he complained of symptoms "unlike anything he had ever experienced in his low back, with new pain radiating into his lower extremities," the symptoms do not differ in character from those indicated in the medical records. Instead, Dr. Cunningham's report from the February 22, 2008 evaluation states that Bridgman's back pain was not significant, and the previous medical records establish that Bridgman had experienced leg pain for years. Additionally, consistent with his prior complaints to Dr. Pierce, Bridgman reported his symptoms as worse after sitting for long periods of time. The primary difference between this and previous appointments was that Bridgman affirmatively told Dr. Cunningham he was concerned the injury was work-related—something he already should have known was a possibility. Though Bridgman's affidavit states that he did not know until Dr. Cunningham told him that his back and leg pain were related and likely caused by operating rough riding locomotives, this is identical to the "specific cause" argument rejected by the federal circuit courts. *See Fries*, 909 F.2d at 1096; *Matson*, 240 F.3d at 1236; *Townley*, 887 F. 2d at 501.

10

¶28 This case is not controlled by our recent rulings in *Dvorak v. Mont. State Fund*, 2013 MT 210, 371 Mont. 175, 305 P.3d 873 or *Siebken v. Voderberg*, 2012 MT 291, 367 Mont. 344, 291 P.3d 572. Although there also are factual distinctions, the important difference between these and the present case is the applicable law. FELA is a federal statutory scheme, and we are required to follow the federal substantive law interpreting its provisions. *St. Louis S.W. Ry. Co. v. Dickerson*, 470 U.S. 409, 411, 105 S. Ct. 1347, 1348 (1985). Such substantive law includes the applicable statute of limitations. *See Engel v. Devenport*, 271 U.S. 33, 38-39, 46 S. Ct. 410, 412-13 (1926). As noted, FELA imposes an affirmative duty upon plaintiffs to investigate the cause of their injury upon notice of a possible job-related connection. *See Matson*, 240 F.3d at 1236. That affirmative duty is not imposed by the Montana law considered in our prior cases. *Dvorak*, ¶ 19; *Siebken*, ¶¶ 21-23.

¶29 In conclusion, Bridgman fails to raise a genuine issue of material fact and we agree that summary judgment in favor of Union Pacific was appropriate. The medical records establish that Bridgman was on inquiry notice that he may be suffering from a work-related back and leg condition before the three years preceding his complaint on January 20, 2011. The claim is time-barred under FELA's three-year statute of limitations and Union Pacific is entitled to judgment as a matter of law.

¶30 *2. Whether the District Court erred in denying Bridgman's request for additional discovery pursuant to M. R. Civ. P. 56(f).*

11

¶31     M. R. Civ. P. 56(f) states that if a party opposing a motion for summary judgment shows, for specified reasons, that it cannot present facts essential to justify an opposition, the court may deny summary judgment or order a continuance to allow additional discovery. "A district court does not abuse its discretion in denying a Rule 56(f) motion if the party moving for additional discovery fails to establish how the proposed additional discovery will prevent summary judgment." *Hinderman v. Krivor*, 2010 MT 230, ¶ 16, 358 Mont. 111, 244 P.3d 306 (citing *Rosenthal*, ¶ 38). The District Court determined that Bridgman failed to meet this burden. Bridgman argues that the District Court ignored his argument that additional discovery about Union Pacific's failure to inform him of the signs and symptoms of cumulative trauma injuries would potentially prevent the railroad from asserting a statute of limitations defense under our holding in *Bevacqua v. Union Pac. R.R. Co.*, 1998 MT 120, 289 Mont. 36, 960 P.2d 273.

¶32     While the District Court did not discuss this particular argument, we conclude that it did not abuse its discretion. Bridgman failed to show what discovery would have been material to the issue before the court. The undisputed facts establish that Bridgman first apprised Union Pacific of the existence of a work-related injury on February 22, 2008. His assertion that discovery may exist showing he was misled by Union Pacific about the signs and symptoms of his injuries up until that date is not compelling in light of the fact that Union Pacific was unaware of any injury to Bridgman. Our ruling in *Bevacqua* is inapplicable. There, the plaintiff was examined over the years by physicians of Union Pacific's choosing who were determined to be agents of the railroad. Since their

12

misrepresentation misled plaintiff into not filing suit within the three-year period, we determined that plaintiff was entitled to have his case heard on the merits. *Bevacqua*, ¶¶ 57-60. Bridgman failed to meet his burden as the moving party under M. R. Civ. P. 56(f) in showing specific reasons requiring further discovery. The court was within its discretion to determine that no further discovery was necessary and to deny Bridgman's request.

¶33 For the foregoing reasons, the judgment of the District Court is affirmed.


/S/ BETH BAKER


We concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ LAURIE McKINNON
/S/ BRIAN MORRIS


Justice Patricia O. Cotter dissents.

¶34 I respectfully dissent from the Court's decision to affirm the order granting the Union Pacific Railroad Company's motion for summary judgment. I would reverse the decision and remand the case for a factual determination by the jury as to whether the statute of limitations has run.

¶35 Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3).

A plaintiff's burden in a FELA action is significantly lighter than in an ordinary negligence case, and some FELA cases have been "submitted to juries based upon evidence 'scarcely more substantial than pigeon bone broth.' " *Grogg v. CSX Transp., Inc.*, 659 F. Supp. 2d 998, 1002 (2009) (citing *Williams v. Natl. R.R. Passenger Corp.*, 161 F.3d 1059, 1061 (7th Cir. 1998) (internal quotations omitted)).

¶36    While the Court correctly concluded that federal substantive law applies in this FELA case, the issue of whether summary judgment was appropriate is governed by state law.  "The rule in Montana, and in the majority of jurisdictions, is that when there is conflicting evidence as to when a cause of action accrued, the question of whether an action is barred by the statute of limitations is for the jury to decide."  Nelson v. Nelson, 2002 MT 151, ¶ 24, 310 Mont. 329, 50 P.3d 139 (citing *Hill v. Squibb & Sons, E.R.*, 181 Mont. 199, 212, 592 P.2d 1383, 1390-91 (1979) (internal citation omitted)).  *See also McCormick v. Brevig*, 1999 MT 86, ¶¶ 102-03, 294 Mont. 144, 980 P.2d 603 (it is for the trier of fact to determine at what point the plaintiff discovered or should have discovered through due diligence any negligence by the accountant when the existence of a trust was self-concealing); *Werre v. David*, 275 Mont. 376, 384, 913 P.2d 625, 630 (1996) (the point at which the plaintiff discovered a connection between the sexual abuse she experienced as a child and her mental disorders as an adult was a question of fact for the jury; thus, denial of the defendant's motion for a directed verdict was correct).

¶37    Drawing all reasonable inferences that may be drawn from the offered proof in favor of Bridgman, I conclude genuine issues of material fact exist.  Though the Court

14

determines that the discussion at the February 22, 2008 doctor appointment was no different than the discussions held during the previous appointments, Bridgman argues that he complained of symptoms "unlike anything he had ever experienced in his low back, with new pain radiating into his lower extremities." Here, as in *Fonseca v. Consol. Rail Corp.*, 246 F.3d 585 (6th Cir. 2001), there is a genuine issue of material fact as to whether the symptoms Bridgman complained of for three years prior to filing the lawsuit were separate from the symptoms he experienced periodically beginning in 1995. Bridgman is entitled to have a jury decide whether and when a reasonable person in his circumstances would have realized that he had suffered more than a *de minimus* injury and that the injury was work-related. For example, a jury could have determined Dr. Pierce's note that Bridgman "carr[ies] a heavy bag at times for work" would not put a reasonable person on inquiry notice that the injury was work-related when there was no evidence that the doctor indicated to Bridgman that carrying a heavy bag was related to his injury, or that Bridgman himself identified the bag as a possible cause of the injury.

¶38    I acknowledge that FELA imposes an affirmative duty on plaintiffs to investigate the cause of their injury upon inquiry notice, but I conclude that whether Bridgman exercised reasonable diligence to investigate his injury is a question of fact for the jury. A jury could have concluded that Bridgman made reasonable efforts to investigate his pain complaints by visiting his chiropractor and doctors, but that his physicians did not know the effect of his occupational exposures on his condition.

¶39    For the foregoing reasons, I dissent from the Court's decision to affirm the District

Court.

/S/ PATRICIA COTTER


Justice Michael E Wheat joins the Dissent of Justice Patricia O. Cotter.


/S/ MICHAEL E WHEAT