*241 JUSTICE McKINNON,
specially concurring.
¶42 I join the Court’s Opinion as to Issues 1 and 3.1 agree that Schoof has standing to assert his right-to-participate and right-to-know claims, and I also agree with the Court’s decision, and underlying analysis, to overrule Fleenor v. Darby School District, 2006 MT 31, 331 Mont. 124, 128 P.3d 1048. The nature of the “injury” in right-to-participate and right-to-know cases is the denial of a reasonable opportunity to participate in the decisions of public agencies and to observe a public agency’s deliberations. By their nature, the constitutional and statutory guarantees are shared by the general citizenry, and their infringement-for example, by failing to provide proper notice of a meeting, by holding an unlawful closed meeting, or by denying the opportunity to submit data, views, or arguments prior to making a final decision-necessarily injures the general citizenry. I believe our Opinion correctly recognizes and clarifies these concepts. Regarding Issue 2, however, it is my view that we should be applying statutory tolling, rather than common law tolling. Thus, as detailed below, I specially concur as to this issue.
¶43 In response to Defendants’ statute-of-limitations defense, Schoof argued that the running of the limitations period should be tolled pursuant to § 27-2-102, MCA. Schoof did not invoke the common law doctrine of equitable tolling; he invoked statutory tolling. As a result, the District Court addressed the applicability of statutory tolling only. The court did not consider or issue a ruling on common law tolling-a doctrine with which the presiding judge (the Honorable Blair Jones) was certainly familiar, given that he was also the presiding judge in one of our prior equitable tolling cases: Arthur v. Pierre Ltd., 2004 MT 303, 323 Mont. 453, 100 P.3d 987.
¶44 On appeal, the parties have briefed the issue of statutory tolling. The Court, in electing to apply common law tolling instead, points to the fact that Schoof cited several equitable tolling cases in his opening brief. Opinion, ¶ 30 (citing Weidow v. Uninsured Employers’ Fund, 2010 MT 292, 359 Mont. 77, 246 P.3d 704; BNSF Ry. Co. v. Cringle (“Cringle F), 2010 MT 290, 359 Mont. 20, 247 P.3d 706; Lozeau v. GEICO Indem. Co., 2009 MT 136, 350 Mont. 320, 207 P.3d 316; and Harrison v. Chance, 244 Mont. 215, 797 P.2d 200 (1990)). I do not believe, however, that Schoof genuinely intended with these citations to obtain application of common law equitable tolling. Indeed, he ties the “general tolling principles” of these cases into his analysis under § 27-2-102(3), MCA. But even if Schoof did intend to invoke equitable tolling on appeal, he did not preserve this legal theory in the District *242 Court. As we recently reiterated, “[i]t is well established that we do not consider new arguments or legal theories for the first time on appeal.” Pilgeram v. Greenpoint Mortg. Funding, Inc., 2013 MT 354, ¶ 20, 373 Mont. 1, 313 P.3d 839; accord Country Highlands Homeowners Assn. v. Bd. of Co. Commrs., 2008 MT 286, ¶ 18, 345 Mont. 379, 191 P.3d 424; Kurtzenacker v. Davis Surveying, Inc., 2012 MT 105, ¶ 17, 365 Mont. 71, 278 P.3d 1002. Hence, I disagree with the Court’s decision to resolve this appeal based on a legal doctrine that was not presented to the District Court in the first instance and whose application on appeal, therefore, violates our rules of appellate practice. I instead would analyze the question properly before us: whether Schoof is entitled to statutory tolling under § 27-2-102, MCA.
¶45 Pursuant to § 27-2-102(l)(a), MCA, “a claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action.” Schoofs claim accrued on July 26, 2007, when the Custer County Commissioners unlawfully (according to Schoofs allegations) adopted the “cash in lieu” policy during an unannounced meeting.
¶46 Distinct from the question of accrual is the question of whether the limitations period has been triggered. “Accrual, as we have said, occurs once events satisfying all the elements of a cause of action have taken place. At that point, the period prescribed by the applicable statute of limitations ordinarily begins to run — time begins to count against the plaintiff, such that if enough of it goes past he can no longer obtain relief.” William A. Graham Co. v. Haughey, 646 F.3d 138, 147 (3d Cir. 2011). That is the general rule set forth in § 27-2-102(2), MCA: “Unless otherwise provided by statute, the period of limitation begins when the claim or cause of action accrues.” Thus, pursuant to the general rule, the limitation period on Schoofs claims began to run on July 26, 2007. Under the law in effect at the time, Schoof had 30 days in which to file a petition alleging violations of the right to know or the right to participate. Sections 2-3-114, -213, MCA (2005). Schoof concedes that he filed the present action beyond this 30-day window.
¶47 Importantly, however, there are
various statutory and judge-made rules that operate to toll the running of the limitations period-that is, “to stop [its] running”; “to abate” it, [Black’s Law Dictionary 1652 (Bryan A. Garner ed., 9th ed., 2009)], or “[t]o suspend or interrupt” it, [Ballentine’s Law Dictionary 1282 (William S. Andersen ed., 3d ed. 1969)]. These tolling doctrines include those for infancy, the pendency of a class *243 action which includes absent class members’ claims, and the dictates of equity. Time that passes while a statute is tolled does not count against the limitations period. This can operate to exclude a chunk of time in the middle of the limitations period-the clock could start, then stop when a class action is filed, and then start again once certification is denied. Perhaps more frequently, a tolling rule directs the court to ignore time at the beginning of the limitations period-an infant in Pennsylvania is not affected by any statutory time limit until he achieves the age of majority (though he could theoretically file suit before that date).
Haughey, 646 F.3d at 147-48 (some brackets in original, some citations omitted). That is the crux of the issue here: whether there is a tolling doctrine that could apply to suspend the running of the 30-day limitation period applicable to Schoofs claims.
¶48 One possibility-and the one Schoof invokes-is the discovery rule. “Even after a cause of action accrues, the ‘running’ of the limitations period can be ‘tolled’ in certain limited circumstances. Under the ‘discovery rule’ the statute is tolled where the injury is inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of.” Wal-Mart Stores, Inc. v. AIG Life Ins. Co., 860 A.2d 312, 319 (Del. 2004) (footnotes and some internal quotation marks omitted); accord Haughey, 646 F.3d at 150 (the discovery rule is “one of those legal precepts that operate to toll the running of the limitations period after a cause of action has accrued”). This rule is recognized both by statute and under the common law. ¶49 By statute, “[l]ack of knowledge of the claim or cause of action, or of its accrual, by the party to whom it has accrued does not postpone the beginning of the period of limitation.” Section 27-2-102(2), MCA (emphases added). However, lack of knowledge of the facts constituting the claim may postpone the beginning of the limitation period:
The period of limitation does not begin on any claim or cause of action for an injury to person or property until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the injured party if: (a) the facts constituting the claim are by their nature concealed or self-concealing; or (b) before, during, or after the act causing the injury, the defendant has taken action which prevents the injured party from discovering the injury or its cause.
*244 Section 27-2-102(3), MCA (paragraph breaks omitted). The Legislature incorporated this discovery provision into § 27-2-102, MCA, in 1987. See Laws of Montana, 1987, ch. 441, § 1.
¶50 Under the common law, the discovery rule has a much lengthier history. The Supreme Court recognized the rule as an established doctrine in Bailey v. Glover, 88 U.S. 342 (1875), which involved a claim of fraud. The Supreme Court held that “when there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered by, or becomes known to, the party suing.” Bailey, 88 U.S. at 349-50. This Court, similarly, applied a discovery rule in Johnson v. St. Patrick’s Hospital, 148 Mont. 125, 417 P.2d 469 (1966), where a surgical sponge had been left in the plaintiffs body and the plaintiff remained ignorant of this fact for nearly seven years. We held that the limitation period on his medical malpractice claim did not begin until the plaintiff learned, or in exercise of reasonable diligence should have learned, of the presence of the foreign object in his body. Johnson, 148 Mont. at 126, 132, 417 P.2d at 470, 473. More recently, we considered the application of a judge-made discovery rule in Bridgman v. Union Pacific Railroad Co., 2013 MT 289,372 Mont. 124,311 P.3d 416, which involved a claim under the Federal Employers’ Liability Act. Pursuant to this discovery rule, a federal statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action. Bridgman, ¶ 24; Matson v. Burlington N. Santa Fe R.R., 240 F.3d 1233, 1235 (10th Cir. 2001).
¶51 As noted, Schoof has invoked the statutory discovery rule. At this point, it is necessary to consider whether the statutes of limitation applicable to his claims permit tolling of the limitation period. Although the Court acknowledges this question, see Opinion, ¶ 32 n. 4, I respectfully suggest there is more to be said on the issue.
¶52 As our decision today reflects, this Court’s tolling jurisprudence has incorporated aspects of federal tolling rules. Opinion, ¶ 35; Weidow, ¶¶ 27-28. Of particular relevance here, federal tolling rules are founded on a rebuttable presumption that limitation periods are subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 130 S. Ct. 2549, 2560 (2010). This presumption is rebutted where “there [is] good reason to believe that Congress did not want the equitable tolling doctrine to apply.” U.S. v. Brockamp, 519 U.S. 347, 350, 117 S. Ct. 849, *245 851 (1997) (emphasis in original). “Equitable tolling is not permissible where it is inconsistent with the text of the relevant statute.” U.S. v. Beggerly, 524 U.S. 38, 48, 118 S. Ct. 1862, 1868 (1998). It has been suggested, therefore, that tolling a limitation period requires a threshold determination of whether the Legislature intended to preclude any exceptions to the time bar at issue. BNSF Ry. Co. v. Cringle (“Cringle II"), 2012 MT 143, ¶ 30, 365 Mont. 304, 281 P.3d 203 (Nelson, Cotter, & Rice, JJ., concurring). If the Legislature did not intend to preclude exceptions to the time bar, then the second step is to determine whether the claimed exception tolls the limitation period on the facts presented. Cringle II, ¶ 30 (Nelson, Cotter, & Rice, JJ., concurring). I shall address these two questions in turn.
¶53 First, there is no indication that the Legislature intended to preclude exceptions to the 30-day time bar in §§ 2-3-114 and -213, MCA (2005). A comparison of three Supreme Court cases is useful in this regard. In Brockamp, the Supreme Court concluded that tolling was impermissible because the statute at issue (1) set forth its time limitations in unusually emphatic form; (2) used highly detailed and technical language which could not easily be read as containing implicit exceptions; (3) reiterated its limitations several times in several different ways; (4) related to an underlying subject matter, nationwide tax collection, with respect to which the practical consequences of permitting tolling would have been substantial; and (5) would, if tolled, require tolling not only of procedural limitations, but also of substantive limitations on the amount of recovery-a kind of tolling for which the Supreme Court found no direct precedent. Holland, 130 S. Ct. at 2561 (summarizing the reasoning in Brockamp, 519 U.S. at 350-52,117 S. Ct. at 851-52). Similarly, the Supreme Court held in Beggerly that tolling was impermissible because (1) the 12-year statute of limitation at issue was unusually generous and (2) the underlying claim dealt with ownership of land and thereby implicated landowners’ need to know with certainty what their rights were and the period during which those rights may be subject to challenge. Holland, 130 S. Ct. at 2561 (summarizing the reasoning in Beggerly, 524 U.S. at 48-49, 118 S. Ct. at 1868). In contrast, the one-year limit on filing a federal habeas corpus petition, which was at issue in Holland, did not contain unusually emphatic language and did not reiterate its time limitation. Moreover, application of equitable tolling would not affect the substance of the petitioner’s claim, and the one-year limitation period was not particularly long. Finally, equitable principles traditionally have governed the substantive law of habeas *246 corpus. Accordingly, the Supreme Court concluded that the one-year limit “reads like an ordinary, run-of-the-mill statute of limitations.” Holland, 130 S. Ct. at 2561.
¶54 Likewise, here, the 30-day limitation period is extremely short. It is not set forth in “unusually emphatic” form or using highly detailed and technical language, nor is the time limit reiterated several times in several different ways. Tolling would not affect the substance of the plaintiffs claim, and the application of equitable principles is consistent with the overriding constitutional goal of transparency and accountability in government. For these reasons, I conclude that the 30-day limitation period may be tolled.
¶55 The next question, therefore, is whether the facts support tolling under the claimed exception. I conclude that they do. Again, pursuant to § 27-2-102(3), MCA, the period of limitation does not begin on any claim or cause of action “for an injury to person or property” until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the plaintiff. This provision applies only if the facts constituting the claim are by their nature concealed or self-concealing or if the defendant has taken action which prevents the plaintiff from discovering the injury or its cause. Section 27-2-102(3)(a), (b), MCA.
¶56 Schoof argued that since Defendants allegedly adopted the “cash in lieu” policy in a closed session and “obfuscat[ed]” the nature of this decision in the minutes, the facts underlying his claims were concealed and he was prevented from discovering the injury. He contended, therefore, that the 30-day limitation period should be tolled pursuant to the discovery rule in § 27-2-102(3), MCA. The District Court noted “substantial factual indicia” that Defendants had conducted their July 26, 2007 meeting in violation of the law, but the court nevertheless denied Schoof s request for tolling on the ground that “[a] deprivation of a constitutional right, in itself, is not an ‘injury to person or property’ ” under § 27-2-102(3), MCA. As support for this proposition, the District Court cited Memphis Community School District v. Stachura, 477 U.S. 299, 106 S. Ct. 2537 (1986). The issue in Stachura, however, was “whether 42 U.S.C. § 1983 authorizes an award of compensatory damages based on the factfinder’s assessment of the value or importance of a substantive constitutional right.” 477 U.S. at 300, 106 S. Ct. at 2539. The Supreme Court did not consider whether an alleged constitutional violation may be construed as “an injury to person” for purposes of a statute governing the limitations period. ¶57 In contrast, the Supreme Court did consider this question the year before in Wilson v. Garcia, 471 U.S. 261, 105 S. Ct. 1938 (1985). There, *247 the Supreme Court was tasked with determining “the most appropriate state statute of limitations to apply to claims enforceable under [42 UÍS.C. § 1983].” Wilson, 471 U.S. at 262, 105 S. Ct. at 1939-40. Section 1983, enacted as part of the Civil Rights Act of 1871, authorizes a federal cause of action for “the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States.” After reviewing the history and purposes of this statute, the Supreme Court concluded:
Congress unquestionably would have considered the remedies established in the Civil Rights Act to be more analogous to tort claims for personal injury than, for example, to claims for damages to property or breach of contract. The unifying theme of the Civil Rights Act of 1871 is reflected in the language of the Fourteenth Amendment that unequivocally recognizes the equal status of every “person” subject to the jurisdiction of any of the several States. The Constitution’s command is that all “persons” shall be accorded the full privileges of citizenship; no person shall be deprived of life, liberty, or property without due process of law or be denied the equal protection of the laws. A violation of that command is an injury to the individual rights of the person.
Wilson, 471 U.S. at 277, 105 S. Ct. at 1947-48 (emphases in original, footnote omitted). The Supreme Court found the following characterization of § 1983 persuasive: “ ‘In essence, § 1983 creates a cause of action where there has been injury, under color of state law, to the person or to the constitutional or federal statutory rights which emanate from or are guaranteed to the person. In the broad sense, every cause of action under § 1983 which is well-founded results from “personal injuries.” ’ ” Wilson, 471 U.S. at 278, 105 S. Ct. at 1948 (quoting Almond v. Kent, 459 F.2d 200, 204 (4th Cir. 1972)). Thus, the Supreme Court held that a claimed violation of constitutional rights is subject to a state’s statute of limitation governing “injury to the person.” Wilson, 471 U.S. at 280, 105 S. Ct. at 1949; see also Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991) (observing that the Supreme Court in Wilson “determined that the personal injury statute of limitations best emphasized the personal nature of constitutional wrongs”); Harvey v. Waldron, 210 F.3d 1008, 1013 (9th Cir. 2000) (applying, in a § 1983 action, Montana’s limitations period for “personal injuries”), overruled in part on other grounds, see Szajer v. City of Los Angeles, 632 F.3d 607, 611 (9th Cir. 2011).
¶58 By the same reasoning, it follows that a violation of the right to participate or the right to know is an injury to the rights of the person *248 for purposes of § 27-2-102(3), MCA. Although Article II, Section 8 refers to the “public,” the statutes implementing this provision treat “public” and “persons” interchangeably. For instance, all “persons” must be afforded reasonable opportunity to submit data, views, or arguments prior to the final agency decision. Section 2-3-111(1), MCA; see also §§ 2-3-103, -114, MCA. Article II, Section 9, on the other hand, states specifically that no “person” shall be deprived of the right to examine documents or to observe the deliberations of public bodies or agencies. Accordingly, a cause of action seeking to enforce these rights is one for “an injury to person,” and the discovery rule set forth in § 27-2-102(3), MCA, applies.[1]
¶59 I therefore disagree with the District Court’s reasoning and conclusion that tolling under § 27-2-102(3), MCA, is not applicable to Schoof. Schoof has alleged “an injury to person’-violations of his right to know and right to participate. Schoof has further alleged that the facts constituting his claims-the adoption of a “cash in lieu” policy at an unannounced meeting-are, by their nature, self-concealing and that he was prevented, due to the self-concealing nature of Defendants’ action, from discovering the injury or its cause. I consequently would hold that § 27-2-102(3), MCA, is applicable to Schoof.
¶60 The foregoing analysis is based on a straightforward application of § 27-2-102(3), MCA, and does not take into consideration the fact that the Legislature incorporated a discovery rule directly into §§ 2-3-114 and -213, MCA, in 2007. See Laws of Montana, 2007, ch. 211.[2] Defendants contend that the incorporation of a specific discovery rule into these statutes is evidence that the general discovery rule in § 27-2-102(3), MCA, is not applicable to petitions under §§ 2-3-114 and -213, MCA. Defendants reason that to hold otherwise would render the 2007 legislation useless, and they note that this Court presumes the Legislature, in adopting an amendment *249 to a statute, intended to make some change in existing law. State v. Heath, 2004 MT 126, ¶ 34, 321 Mont. 280, 90 P.3d 426.
¶61 Contrary to Defendants’ argument, applying the general discovery rule to Schoof s petition actually fulfills legislative intent and does not render the Legislative amendments useless. Senate Bill 177 (2007)-through which the amendments to §§ 2-3-114 and -213, MCA, were enacted — was in response to Kadillak v. Anaconda Co., 184 Mont. 127, 140, 602 P.2d 147, 155 (1979), where this Court said that a district court “lacked jurisdiction” to consider a petition filed under § 2-3-114, MCA, past the 30-day deadline. According to the prefatory language to Senate Bill 177, the Legislature recognized the impracticality of such a rule. After citing the Kadillak holding, the prefatory language states:
WHEREAS, if an agency, board, or other public entity holds a meeting but does not give notice of a meeting, does not publish an agenda for the meeting, and does not publish minutes of a meeting, there is no way for the public to know whether a meeting occurred, whether a decision was made by the agency, board, or other public entity that is of public interest, or whether the 30-day “clock” has in fact started, except by word of mouth; and
WHEREAS, if a potential plaintiff learns of the meeting by word of mouth at a time too late in the 30-day period to discuss the violation of the participation in government statutes with a potential defendant, it could force a hasty decision to bring suit against the agency, board, or other public entity just because the 30-day period has almost passed.
The Legislature sought, therefore, to ensure that a plaintiff or petitioner, “who might otherwise be precluded from legal action” under then-existing law, has 30 days from the date on which he or she “learns or should have learned” of the violation to file suit. Laws of Montana, 2007, ch. 211 (emphasis added).
¶62 This legislative act served to eliminate any doubt that our holding in Kadillak is no longer good law. However, this does not mean that Kadillak precludes application of the general discovery rule in § 27-2-102(3), MCA, to Schoof. Even before Senate Bill 177 became law, the precedential value of Kadillak’s holding was doubtful. There is no indication that the Kadillak Court considered the common law discovery rule. Moreover, the Court had no opportunity to consider § 27-2-102(3), MCA, since that provision was not enacted until 1987. Finally, this Court has recently clarified that “[t]he legislature does not deprive the courts of subject matter jurisdiction when it enacts filing *250 or notice deadlines. We have required accurate use of the term ‘jurisdiction’ in our more recent history.” Cringle I, ¶ 13.
¶63 Accordingly, the passage of Senate Bill 177 does not establish that the general discovery rule in § 27-2-102(3), MCA, is inapplicable to petitions under §§ 2-3-114 and -213, MCA. If anything, Senate Bill 177 shows the opposite: that the Legislature wanted to ensure that petitioners like Schoof have a fair opportunity to file their claims upon learning of the right-to-know or right-to-participate violation. Cf. Heath, f 34 (finding that “the Legislature’s purpose was simply to ‘clarify’ and ‘streamline’ ” the statutes at issue, not to make substantive changes to them).
¶64 As a final matter, I have some concerns about the Court’s approach to the tolling issue here. Although described' as a “supplement! ]” to our common law equitable tolling doctrine, Opinion, ¶ 37, in my view what the Court applies here is, in substance, the common law discovery rule that we recognized as far back as Johnson, 148 Mont. 125,417 P.2d 469-namely, that the period of limitation does not start until the plaintiff learned, or in exercise of reasonable diligence should have learned, of the injury. I do not perceive in our Opinion any rationale for adopting a new discovery doctrine, under the rubric of “equitable tolling,” when we already have a viable discovery doctrine whose principles easily could be applied here.
¶65 Moreover, I harbor reservations about the Court’s reliance on Veltri v. Building Service 32B-J Pension Fund, 393 F.3d 318, 323 (2d Cir. 2004). See Opinion, ¶ 35. That case was decided under the “fraudulent concealment” doctrine, see Veltri, 393 F.3d at 323, and various federal cases have equated “fraudulent concealment” with equitable estoppel, not equitable tolling, see Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450-51 (7th Cir. 1990); Coppinger-Martin v. Solis, 627 F.3d 745, 751 (9th Cir. 2010).[3] In this regard, a review of cases cited in Veltri reveals “troubl[ing]” confusion in federal jurisprudence *251 regarding “the overlap between accrual and tolling based on fraudulent concealment.” Pearl v. City of Long Beach, 296 F.3d 76, 81-84 (2d Cir. 2002) (cited in Veltrif, see also Cada, 920 F.2d at 450-52 (cited in Veltri); Haughey, 646 F.3d at 148-49 (explaining the Cada court’s confusion between “accrual” and the trigger for the limitations clock). Regardless of the confusion in federal law, Montana has a statute-§ 27-2-102, MCA-that governs accrual, the starting of the limitations period, and the role that the discovery rule plays. To the extent federal cases apply different rules, I am reluctant to endorse them in our caselaw. If we are to base our decision on common law principles-which I do not believe is necessary here for reasons discussed above-then I would do so by applying our existing discovery rule. I worry that the Court’s approach today of supplementing our established equitable tolling doctrine with a new discovery rule that is taken from federal cases which espouse equitable estoppel may engender significant confusion in this area of law.
¶66 In conclusion, I would hold that Schoof is entitled to tolling under the discovery rule in § 27-2-102(3), MCA. Common law doctrines-which were neither asserted in the District Court nor properly raised on appeal-are unnecessary to decide this case. I specially concur.
JUSTICE COTTER joins the Special Concurrence of JUSTICE McKinnon.

 In relying on the Supreme Court’s analysis of § 1983 in Wilson, I do not suggest that all federal statutes and caselaw governing § 1983 actions should apply to violations of the Montana Constitution. I am applying the Wilson Court’s holding, by analogy, only for the conclusion that a claimed constitutional violation is “an injury to person” for purposes of the discovery rule.

 The statutes now provide that a petition must be filed within 30 days of the date on which the plaintiff or petitioner “learns, or reasonably should have learned, of the agency’s decision.” Sections 2-3-114, -213, MCA. Schoof cannot rely on these amendments because they went into effect on October 1, 2007. Opinion, ¶ 28.

 As one court explained, “Equitable tolling focuses on whether there was excusable delay by the plaintiff: If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs. Equitable estoppel, on the other hand, focuses primarily on actions taken by the defendant to prevent a plaintiff from filing suit, sometimes referred to as fraudulent concealment.” Lukovsky v. City & Co. of San Francisco, 535 F.3d 1044, 1051 (9th Cir. 2008) (citations, emphasis, and internal quotation marks omitted). The elements of Montana’s equitable estoppel doctrine are set forth in Arthur v. Pierre Ltd., 2004 MT 303, ¶ 30, 323 Mont. 453, 100 P.3d 987.